T. J. SMITH,

*Plaintiff and Appellant,*

vs.

C. A. LEWIS, SR.,

*Defendant and Respondent.*

(No. 2665; December 20th, 1955; 291 Pac. (2d) 804)

30

For the plaintiff and appellant the cause was submitted upon the brief and oral argument of Henry A. Burgess and Edward J. Redle, both of Sheridan, Wyoming.

For the defendant and respondent the cause was submitted upon the brief of Goppert & Fitzstephens, Cody, Wyoming; oral argument by Mr. Ernest J. Goppert.

32

## OPINION

Harnsberger, Justice.

The plaintiff Smith, a licensed real estate broker, sued defendant Lewis to recover a broker's commission for the sale of Lewis' property, basing his claim upon an express oral employment agreement and upon the value of services rendered. Judgment was in favor of Lewis, and Smith appeals, claiming the evidence was insufficient to sustain the judgment, and that as a matter of law, the evidence does not support the judgment. While recognizing the rule that under such circumstances this court will consider only undisputed evidence and evidence most favorable to the successful party together with its reasonable inferences, the ap-

pellant insists the evidence given in respondent's behalf not only fails to sustain the judgment but, in fact, supports appellant's claim. We cannot agree.

The evidence we are entitled to consider shows that Smith, a licensed real estate broker, went to Lewis representing he had people named Woosley who were interested in purchasing Lewis' property, and inquired if Lewis would sell what he called his "Otter Creek outfit". Lewis replied he had decided to sell if he could find a buyer at a price of $16 per acre net to him for the deeded land, not including irrigated ranches. Smith then asked Lewis to list the property with him and to give him approximately five or six weeks to make the sale. Lewis refused either to list the property with Smith or to give him any definite time in which to negotiate a sale. There was nothing said about any commission and Lewis testified he never, at any time, employed Smith or agreed to pay him any commission. The appellant also testified Lewis had never agreed to pay him a commission. Many other men had wanted to buy the property and Lewis had also told them he would sell it. Thereafter, Woosleys called upon Lewis and told him they were interested in the ranch. Either just before or right after the Woosleys' visit, Lewis received a telegram from Smith saying, in part, that he had "priced the entire ranch" to Woosleys "at $1.50 per acre to protect commissions". Lewis understood this to mean that his property was being priced by Smith to the Woosleys at $1.50 per acre above the $16 net to him, and Lewis testified "He (Smith) would have been entitled to whatever he acquired, if I sold the property to Woosleys above $16.00 an acre."

A sale to Woosleys was finally consummated for certain of Lewis' properties which included deeded lands, leases, livestock and possibly some equipment. The uncultivated deeded lands brought Lewis $16 net per acre. During the negotiations, which continued from

June through the fore part of the following January, Smith was present at some of the meetings between the parties. After the purchaser had made a down payment of $25,000, Smith for the first time told Lewis he wanted Lewis to pay him some commission. According to his testimony, Lewis responded—"I told him I didn't owe no commission, that the deal was performed, as I told him, at a certain price per acre net" and "he better go back to the people who he said was to pay the commission". Later, Smith wrote Lewis—"Since our meeting in Worland I have talked several times with Mr. Woosley regarding the commission on this ranch sale and he does not seem to want to pay any part of the same." It also appears that after the down payment was made, Lewis directed Smith to help make some inventories and to get abstracts for Woosleys' attorney to examine, and that Smith made arrangements for one or two of the meetings between the parties and checked the lands.

Counsel says—"It is Smith's position that he had until July 1 to produce a buyer, and if a sale was consummated, or negotiations commenced by said date which led to a sale, he was entitled to a commission provided that the lands sold for more than $16.00 an acre." Appellant insists the evidence to be considered shows Lewis gave Smith a definite time within which to negotiate a sale and claims it was within that time that Lewis prevented him from making a sale at a price in excess of $16 net per acre. We do not find this to be correct. Lewis testified directly that he did not give Smith a definite time within which to negotiate a sale. We must accept his statement regarding the matter.

It is our understanding that Smith contends the evidence to be examined under the rule, proved (1) that Lewis employed Smith to sell his properties and to pay Smith as commission all amounts received in excess

of $16 per acre net to Lewis for the uncultivated deeded lands sold; that, in consequence, Lewis was under a duty to protect Smith's offer of the lands to Woosleys at $1.50 above that price, but, in violation of that duty, Lewis prevented Smith from selling the lands to the Woosleys at the price he had quoted by selling to them for only $16 per acre, and—(2) that after Smith informed him he wanted Lewis to pay him a commission, Lewis, by his direction to Smith respecting the inventories and abstracts, ratified Smith's agency and thus became liable for the value of Smith's services.

With respect to contention (2), we remember that when Smith first told Lewis he expected Lewis to pay him a commission, Lewis answered that Smith had better go back to the people he said were employing him. This makes it plain to us that the requests Lewis made of Smith respecting inventories and abstracts, and Smith's arranging meetings and checking lands, were as consistent with Lewis' understanding that Smith was the agent and employee of the Woosleys, as it is with Smith's contention that the acceptance of his services—after notification he was expecting a commission—amounted to a ratification of Smith's agency in Lewis' behalf. It would seem the lower court so regarded these matters, if, in fact, any doubt was entertained. In any event, the judgment of the lower court would carry with it every finding of fact necessary to support it.

As to contention (1), we might well repeat here what was said in Stevens v. Brimmer, 35 Wyo. 452, 463, 251 P. 1, 4, 49 A.L.R. 919:

"The difficulty * * * arises principally from the failure thereby to show a contract of employment, either express or implied, and that is necessary to entitle a real estate broker to compensation, unless, it may be, there should be a showing of ratification sufficient to overcome the absence of an original contract of employment."

What we have said above eliminates any question of ratification, and we consider the evidence sufficient to warrant a finding that Lewis never employed Smith to sell his property. When a real estate broker inquires of an owner if he desires to sell his property, it is not enough to render the broker, an agent of the owner, that the owner quote a net price for which he would be willing to sell. See authorities listed under III, 43 A.L.R. 848, 849, 850. Castner v. Richardson, 18 Colo. 496, 33 P. 163. This is even more true here, where the owner positively refused to list his property with the broker and refused to give him any definite time within which to negotiate a sale. See Pierce v. Thomas, 4 E.D. Smith (N.Y.) 354, quoted with approval by this court in Stevens v. Brimmer, supra. Nor does the fact that the broker finds a purchaser to whom the owner sells, entitle the broker to a commission from the owner, in the absence of the owner's employing the broker to sell property. The broker stands in no different position than any other volunteer.

Even though Lewis understood that Smith would be entitled to amounts acquired in excess of the price quoted, appellant's contention is answered by the language used in 2 Restatement of the Law of Agency, Ch. 14, § 447, p. 1049, as follows:

"If it is agreed that the broker is to have as commission only what is received by the principal above a specified net price and the principal closes with the broker's customer for a sum not in excess of such stated net price, the broker, by the terms of the offer, is entitled to no commission."

Also see Rees v. Spruance, 45 Ill. 308, 311; Morton v. Barney, 140 Ill. App. 333, 339, 340.

If there is any doubt about the soundness of our conclusion that the evidence does not prove (1) any contract of employment (2) any ratification which entitled Smith to compensation for services rendered, still, for Smith to succeed, it was necessary that he prove he had

procured a customer who was ready, able and willing to purchase at a price in excess of $16 per acre net to Lewis and that such a sale was prevented by the fraud, bad faith or other fault of the owner Lewis. There is no evidence that Smith could have made a sale of the property at a price in excess of the net price quoted by Lewis. The mere fact that Smith quoted the deeded uncultivated lands of Lewis to the Woosleys at a price of $1.50 above the net amount demanded by Lewis, does not even tend to show that Smith could have induced the Woosleys to pay that price or any other price above the $16 net per acre. Certainly the Woosleys were not called upon to testify about the matter, nor was any evidence to such effect offered. See 12 C.J.S. 171, 172, n. 79, 80. Furthermore, the sale by the owner to a purchaser produced by the broker at the identical price the owner had asked for his property from the very beginning can hardly be said to have prevented the broker from making a sale at an excess price in the absence of the owner's agreement to give the broker the exclusive right to make a sale or the right to make a sale within a definite time. Such a sale by the owner is not evidence of fraud, bad faith, or of fault on the part of the owner. See 8 Am. Jur. 1102, § 190; Johnson v. Virginia-Carolina Lumber Co. (1908) 89 C.C.A. 632, 163 Fed. 249; Ferguson v. Willard (1912) 116 C. C. A. 406, 196 Fed. 370. Some courts have gone so far as to say that even where there was a contract with a broker listing the property at a certain sum, when the owner sells for a less amount, the broker cannot recover because the contract was only to pay a commission if the sum fixed was received and this although the broker had procured the purchaser to whom the sale was made. See Hughes & Thurman v. Dodd, 164 Mo. App. 454, 146 S. W. 446, followed by many later Missouri and other courts' decisions. So even if it were true that a contract of brokerage resulted un-

der all the facts and circumstances presented by the considered evidence, the applicable rule would be as is set forth in 2 Restatement of the Law of Agency, § 447, p. 1048, as follows:

"The principal may, however, by clear language so condition his promise to pay commissions that the commission is payable only if the broker obtains the original specified price *or other terms,* even though the principal closes the transaction at a lesser price or on different terms, with the broker's customer." (Italics supplied.)

Many courts have taken the view that when a net price is asked by the owner, the owner invites the broker to negotiate with the purchaser for his compensation. See Kaercher v. Schee, 189 Minn. 272, 249 N.W. 180, 183.

A relatively recent Missouri case deals somewhat with the question of whether a sale by an owner to a purchaser produced by a broker, at a less price than that which entitled the broker to compensation, amounts to fraud or bad faith on the owner's part, where the broker's contract of employment made his right to commission depend upon his obtaining a sale at a price different than that for which the owner sold. Wolcott v. Moser (Mo. 1953), 262 S.W. 2d 620, 624, 625. The court recognized and approved the rule that even though a broker's contract of employment makes his right to compensation depend upon making a sale at a fixed price, the owner cannot defeat the broker's right to commission, if the owner is guilty of any fraud, bad faith or other fault, which prevents the broker from fulfilling his contract, but held, under the evidence in that case, that the sale by the owner was not a fraud. A per curiam opinion appended to the decision (p. 624) quotes the broker's contention as set forth in a supplemental brief, as follows:

" 'We think it plain that when defendant sold his stock for $50.00 a share directly to the buyer procured by plaintiff, defendant unquestionably kept from occur-

ring and rendered impossible plaintiff's performance under an unterminated agreement calling for sale at $62.00 per share.'"

The court's analysis of this statement and its conclusions are as follows (pp. 624, 625):

"What this argument means is that a man who made such a contract could never sell to anyone at any price because, according to plaintiff, if he did he would be preventing plaintiff from ever being able to perform his contract. In other words, he would make it impossible for plaintiff to perform by disposing of the subject matter of the contract, and, regardless of whether plaintiff ever could have performed, that would be preventing his performance and give him a right to compensation. What this argument overlooks is that plaintiff and defendant made a valid contract, under which plaintiff was only entitled to compensation if he procured a buyer at the price stated. Plaintiff has not sought to set this contract aside or made any claim that he had any other contract; nor brought an action for damages for fraud and deceit. He was not entitled to any compensation unless he could perform the contract he made. Thus it is obvious that plaintiff's argument, about defendant preventing his performance, is erroneous."

Answering a further contention that the owner's purpose to defraud the broker was evidenced by his quoting a high sale price to the broker when it might reasonably be inferred the owner never expected to receive such a price but had in mind selling at a more realistic figure, the court continued (p. 625):

"This argument means that a man who makes such a contract (which he has a right to make) cannot hold the other party to it and, *although the other party is unable* to perform it, cannot deal on different terms with anyone with whom the other party attempted to deal at the contract price. Of course, this would defeat the only purpose of making such a contract. Certainly, an intention to hold a party to the terms of a valid contract could not be fraud." (Italics supplied.)

The instant case makes even more cogent here the reasoning of the Missouri court, for even if it is con-

ceded that there was any contract of employment, it only entitled the broker to amounts received by Lewis in excess of the $16 per acre net. When it does not appear by the evidence that the broker could or would ever be able to perform his part of the contract by making a sale at an excess price, it would be unconscionable to hold that by such a contract the owner forever precluded himself from selling his property at the original figure he had quoted, just because the broker had named a larger figure to the purchaser.

Mr. Lewis did not request Smith to find a buyer for his property. In response to Smith's inquiry he quoted a price for which he would sell. He later testified that had Mr. Smith sold the property for any excess above the price quoted, Smith would have been entitled to all above the quoted price he "acquired"; that when Smith claimed a commission after the purchaser had made a substantial down payment, Lewis told him he owed him nothing and that he should go back to the people whom Smith said had employed him.

Under the circumstances in the case before us, we believe Stevens v. Brimmer, supra, definitely points the way for our decision although the appellant attempts to avoid its compelling influence by stating:

"The case at bar is different from the Brimmer case in that the defendant gave the plaintiff until July 1st within which to sell the property; that defendant was advised by the wire of June 11, 1951, that the plaintiff was seeking a commission in the transaction; that on September 7, 1951, when the preliminary papers were signed at Worland, Wyoming, the plaintiff demanded a commission in the transaction from the defendant."

We have already pointed out that the evidence upon which the appellant must rely shows Lewis did *not* give Smith until July 1st within which to make a sale; that the telegram sent to Lewis did *not* make a contract of employment entitling him to any commission (see 4 R.C.L. 299; Morton v. Barney, 140 Ill. App. 333) and

we have determined that a demand for compensation followed by performance of service which may fairly be considered as rendered in behalf of the purchaser does not necessarily make the broker the owner's agent and compel a finding that there was a ratification of employment.

The important facts which motivated the decision in the Brimmer case were that the plaintiff by letter to one of the defendants stated he had inquiries for properties such as were owned by defendants and inquired the defendants' selling price and what the plaintiff might expect as a commission if he found a buyer for the defendants. An answering letter told plaintiff the defendants had not anticipated it would be advisable to place the property in the hands of an agent for sale but if they received a fair offer they would probably be inclined to dispose of their property but for not less than $1,000 per acre net for 1,140 acres, and reasonable compensation for their other acres. Plaintiff then advised that defendants' letter had been submitted to a company which ultimately purchased the property and plaintiff asked defendant Brimmer to protect him in a reasonable commission. In affirming the lower court's conclusion that these facts did not present a cause of action, this court decided there was no contract of employment and cited numerous supporting authorities.

In the Brimmer case the court construed the pleaded facts to mean the plaintiff had invited defendants to list the property with plaintiff for sale at a price to be stated. The court similarly considered the defendants had declined the invitation to list the property for sale with the plaintiff and that by naming a "net" price had clearly excluded any obligation on their part for a commission; and, we repeat, it also appeared that when notifying defendant Brimmer that the plaintiff had submitted his letter to the ultimate purchaser the

plaintiff requested defendant Brimmer to protect his claimed commission.

In these above-noted respects, the substance of the situation in the two cases is identical, and we believe it will serve no good purpose to attempt a restatement of the principles which were then deemed by this court to be controlling or to repeat the citations of authorities which were there considered.

Under all these circumstances, we must hold that the lower court was amply justified in finding that Lewis was not indebted to Smith in any sum; and its judgment is accordingly affirmed.

*Affirmed.*

BLUME, C. J., concurs.

Due to the illness and passing of the late Chief Justice William A. Riner, it was not possible to submit this opinion to him for his examination. However, in previous conferences, Chief Justice Riner indicated his concurrence with the conclusion hereinabove expressed.