**AL J. GOODMAN & CO., Plaintiff,**

v.

**BUCYRUS–ERIE COMPANY,
Defendant.**

**Civ. A. No. 67–C–96.**

United States District Court,
E. D. Wisconsin.

June 2, 1971.

Robert E. Hackett, Jr. and Roland J. Steinle, Jr., Milwaukee, Wis., for plaintiff.

Charles Q. Kamps and Ross R. Kinney, Milwaukee, Wis., for defendant.

## OPINION AND ORDER FOR JUDGMENT OF DISMISSAL

REYNOLDS, District Judge.

This is a diversity action for damages for breach of an alleged contract under which the plaintiff broker was to supply a buyer for a certain piece of construction equipment * owned by the defendant.

Specifically, the paintiff claims that it had a contract with the defendant under which the defendant agreed to sell the dragline to a named buyer plaintiff had secured exclusively, and that the defendant breached the contract when it sold to the named buyer through its own distributor, Mussens Limited, without the knowledge or consent of the plaintiff. As a result of the breach, plaintiff claims to have suffered a loss of commission or profit in the amount of $30,000.00.

Plaintiff is a North Carolina partnership engaged in the business of dealing in new and used construction equipment and acting as a broker for the purchase and sale of such equipment.

Defendant is a Delaware corporation with its principal branch office located in South Milwaukee, Wisconsin, and is engaged in the manufacture and sale of large earthmoving equipment, among other products.

* The equipment was a 9–W walking dragline, a machine used in dredging operations.

Henry J. Kaiser Co. (Canada) Ltd. is a foreign corporation engaged in large construction projects (hereinafter "Kaiser") and was the ultimate purchaser of the dragline.

Mussens Limited is a Canadian corporation engaged generally in machinery sales and service. Mussens distributes the products of the defendant, Bucyrus-Erie Company.

The agreed issue in the case is whether plaintiff is entitled to a commission or a profit on the sale of the dragline to Kaiser.

### THE GOODMAN — BUCYRUS-ERIE—KAISER DEALINGS

In August-September of 1964, Kaiser was in the process of preparing a bid on a large construction project in Canada known as the Black Lake job. In this connection Charles G. Davis, the construction manager for Kaiser, gave instructions to Walter F. Racher, equipment manager for Kaiser, to obtain information about the cost and availability of equipment for use on the project. Racher, at no time material to this action, had any authority to purchase on behalf of Kaiser or to commit Kaiser to a purchase.

On September 2, 1964, Racher telephoned B. Paul Goodman, one of the partners of plaintiff, and asked for information on various equipment (as hereinafter used, "Goodman" refers to B. Paul Goodman).

Following this call, on September 3, Goodman wrote to Racher and gave him information about various pieces of equipment that were available "subject to prior sale." Included in the equipment described was the Bucyrus-Erie dragline involved in this case which was quoted as having a selling price of $165,000.00.

The availability of this dragline for sale by the defendant at a price of $135,000.00 was generally known among dealers in used construction equipment throughout the country prior to September 1964.

On September 3, 1964, the same day that he wrote to Racher, Goodman sent the following inquiry to the defendant:

"Asheville, N. C.   SEP 3 1964

"Gentlemen:

"We have today offered the equipment below, listed with us by you for resale, to one of our interested customers. Please note this card and return to us indicating present availability and any change in status since originally quoted. If our customer is interested, we shall advise you further. We shall appreciate your co-operation. PLEASE Note and return this card.

"Re: Your 7/13/64 quotation of:

"1— Bucyrus-Erie 9–W Dragline."

The inquiry was returned September 10 with the notation: "Still available $135,000.00 as is where is."

On September 9, Goodman received a call from Mr. Racher of Kaiser who expressed an interest in the Bucyrus-Erie dragline described in Goodman's letter of September 3. Racher indicated he wanted additional information about the dragline and would like to inspect it.

On the same day Goodman placed a call to John Hollingsworth who was the used machines coordinator for the defendant. Goodman indicated that Kaiser had demonstrated an interest in the dragline and had inquired as to the availability of the equipment. Hollingsworth told him that it was still for sale and was located at Madisonville, Kentucky, where it could be inspected. Hollingsworth also indicated that there was an inspection and specification report available and he would be glad to furnish a copy to Kaiser. Hollingsworth noted the name Kaiser and said that Goodman was the first person to bring the name of Kaiser to Hollingsworth's personal attention. Hollingsworth said that the defendant would not quote Kaiser on the dragline but mentioned that the defendant's asking price of $135,000.00 was well known by dealers in the used equipment business.

The conversation did not embody any discussion or agreement that the defendant would deal with Kaiser only through the plaintiff. There was no discussion concerning the payment of any fee or commission to the plaintiff in the event that the dragline was eventually sold to Kaiser.

Goodman then telephoned Racher and advised him of the information on the availability of the dragline that he had just received from Hollingsworth. Goodman suggested that if Racher wanted more information, he should contact Hollingsworth directly and have the inspection and specification report read to him.

Racher did as Goodman suggested and called Hollingsworth and discussed the report. Racher at that time indicated he would soon make a trip to Kentucky to inspect the dragline.

Later, on either September 9 or September 10, Hollingsworth called Goodman and asked for Racher's address so that the inspection and specification report could be sent to him. There was no discussion in this conversation relative to plaintiff's receiving any fee or commission, nor was there any discussion of plaintiff's being protected in relation to the sale of the dragline to Kaiser.

Hollingsworth thereafter sent the report to Racher and also supplied him with estimates on the cost of dismantling the dragline, shipping it from Kentucky to Canada, and there reassembling the machine.

Goodman's only further contacts with the defendant concerning the sale of the dragline were in the nature of inquiries as to the status of any negotiations with Kaiser for the sale of the machine and requests to be kept advised of further developments. On December 16, 1964, Hollingsworth wrote to Goodman and advised him that the dragline had been sold to Kaiser through Mussens.

THE MUSSENS—BUCYRUS-
ERIE—KAISER DEALINGS

On the same day, September 9, that Goodman advised Racher that the defendant still had the dragline available for sale, Racher relayed the information he had about the equipment to his superior, Gordon Davis, the construction manager for Kaiser and the man in charge of the Black Lake project.

David then made contact with Mussens concerning the dragline. Mussens had earlier been in contact with Kaiser concerning equipment for the Black Lake project. They had furnished Kaiser with a preliminary survey report describing Bucyrus-Erie equipment that might be suitable for use on the project. The survey, which was originally prepared by the defendant in August 1964, described new equipment. It did not refer to the dragline which is the subject of this action.

Davis was anxious to deal with Mussens because he had had satisfactory dealings with them in the past and because Mussens would be available to service Bucyrus-Erie equipment. The availability of service was a major consideration in Davis' decision to contact Mussens.

Shortly after Davis made contact with Mussens, arrangements were made for Racher and a Mussens' employee to go to Kentucky and make an inspection of the dragline.

The details of the negotiations between Kaiser, Mussens, and the defendant do not appear of record, but in December 1964, the dragline was sold to Kaiser by Mussens who had obtained it from the defendant.

The plaintiff contends that the defendant had given it the exclusive right to sell the dragline to Kaiser. The plaintiff argues that the parties, by virtue of the telephone conversation of September 9, 1964, between Goodman and Hollingsworth, had made a contract under which the defendant would deal with Kaiser exclusively through plaintiff, and that the defendant breached the contract when it dealt with Kaiser through Mussens without the knowledge of plaintiff.

■ I am of the opinion that there is insufficient evidentiary support to make a finding that such a contract was made. In my opinion, the September 9 conversation can be construed, at best, as an informal arrangement for the mutual exchange of information relative to any future contact that Kaiser may have with Goodman or Bucyrus-Erie concerning the sale of the dragline. While the defendant may not have been candid in its dealings with plaintiff with respect to negotiating through Mussens, it did not violate any contractual obligation in dealing with Kaiser through Mussens.

The defendant's contention is that there was no contract between the parties, and that if there were one, plaintiff could not collect a commission under it because the plaintiff was not the procuring cause of the sale of the dragline by defendant to Kaiser.

■ To entitle a broker to a commission on a contract, it must be found that he was the procuring cause of the sale. Bowe v. Gage, 127 Wis. 245, 106 N.W. 1074 (1906).

"The term 'procuring cause', as used in describing a broker's activity, means more than 'but for' causation. It refers to a cause originating a series of events which, without break in their continuity, result in accomplishment of the prime objective of employment of the broker, which usually consists of procuring a purchaser ready, willing, and able to buy property on the owner's terms or of effecting a sale. * * *" Marshall v. White, 245 F. Supp. 514, 517 (W.D.N.C.1965).

■ It cannot be said that Goodman was the procuring cause of the sale of the dragline. While he was the first person to bring Kaiser's name to the attention of Hollingsworth, he in no sense had a buyer who was ready, willing, and able to purchase. His only contact with Kaiser was through Racher, an individual who had no authority to bind Kaiser and who was only making inquiries as to available equipment for use in the preparation of the bid on the Black Lake project.

The defendant cites as dispositive of this case Smith v. Lewis, 75 Wyo. 29, 291 P.2d 804 (1955). Plaintiff broker claimed to have a contract with the defendant owner to sell certain real estate to a third party. The commission was to be the excess that the broker could obtain over the asking price of the owner. Eventually the third party contacted defendant and effected a sale of the property. After holding that there was no contract of employment between the parties nor any ratification of the broker's activities, the Court went on to say that the denial of plaintiff's claim for relief was buttressed by the broker's having failed to produce a buyer ready, willing, and able to purchase at the excess price. The Court concluded that there, as here, there was no evidence that Smith could have made the sale at the excess price. I am of the opinion that the holding and the reasoning of Smith v. Lewis, supra, is controlling on the facts developed by the evidence in this case.

The foregoing opinion shall constitute my findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

Based on the foregoing,

It is ordered that judgment be entered in favor of the defendant and against the plaintiff dismissing this action.