**In re Denise Diane MALACHOSKY a/k/a Denise Diane Clayton, Debtor.**

**SIGNAL CONSUMER DISCOUNT COMPANY, Plaintiff,**

**v.**

**Denise Diane MALACHOSKY, a/k/a Denise Diane Clayton, Defendant.**

**Bankruptcy No. 88–02065.**
**Adv. No. 88–0524.**

United States Bankruptcy Court,
W.D. Pennsylvania.

March 21, 1989.

Susan M. Schramm, Hyatt Legal Services, Bridgeville, Pa., for debtor.

Jesse L. Katz, Pittsburgh, Pa., for Signal Finance.

## MEMORANDUM OPINION

JUDITH K. FITZGERALD,
Bankruptcy Judge.

The matter before the Court is a complaint to determine the dischargeability of a debt owed by the Debtor to the Plaintiff, Signal Consumer Discount Company, pursuant to 11 U.S.C. § 523. This is a core proceeding.

Although the complaint does not cite the specific subsection of 11 U.S.C. § 523 on which Signal relies, testimony and the arguments of counsel elicited the fact that the complaint is founded on § 523(a)(2)(B). The materially false statement allegedly made by Debtor is her failure to list all her creditors on a loan application she signed with Signal Consumer Discount Company on November 27, 1987. This bankruptcy was filed on August 4, 1988.

The essential facts are not in dispute, but the parties differ concerning the inferences to be drawn as to Debtor's intent in omitting from the application certain debts which she then owed to other creditors. Signal contends that she intended to deceive it and thereby induce it to grant her a loan for which she did not qualify. Debtor contends that she had no such intent and that she acted in good faith by answering all questions Signal asked of her.

---

The credible evidence and the documents introduced at trial establish the following facts: In approximately April of 1986 the Debtor contacted Signal and obtained a loan. On or about November, 23, 1987, Debtor received in the mail a letter from Signal indicating that she had been preapproved for $500.00 of additional credit. The Debtor called Signal to request the $500.00 loan at which time she told the Signal representative that she had an existing account. Signal's representative asked her if she still had the same loans as were listed on her 1986 application and she indicated that she did. She responded to all of the questions asked of her. She was not asked whether the loans reflected on the 1986 application were all of the loans she had, nor was she told that a credit check would be made. Debtor testified that she assumed that a credit check had been made by Signal before it offered her $500.00 of preapproved credit.

Testimony further established that after Debtor contacted Signal on November 23, 1987, Signal ran a routine credit check which established that Debtor had three outstanding debts (i.e., with Shaw's Jewelers, St. Clair Hospital, and Kaufmann's) which she had not reported during the telephone conversation. It also was established that Debtor had two other loans which she had not reported to Signal and which did not appear on the credit report. One of these was with PHEAA and the other with Avco Finance.

Several days after Debtor requested the loan, she was contacted by Signal and told to come to its office to pick up her check. On November 27, 1987, she went to the local Signal office and was shown the loan application, Plaintiff's Exhibit B, which previously had been prepared by Signal as a result of the telephone conversation in which Debtor requested the $500.00 loan. At the Signal office, Debtor was asked whether the debts listed were correct and she said they were. Various insurance policies were explained to her, as was the fact that Signal, which considered this loan to be a consolidation with her 1986 loan, would apply some of the loan proceeds to repay certain of Debtor's outstanding credit obligations. Debtor signed the application: Signal consolidated this new $500.00 loan into the original balance for a total of $2,719.50 and gave $538.54 to Debtor in a check.

Signal, as promised, used proceeds of the second loan to pay off the balances of seven debts, three of which were with Kaufmann's, Shaw Jewelers, and St. Clair Hospital. These three were listed only in the credit report, Plaintiff's Exhibit C, and not on either of Debtor's loan applications. Despite Signal's awareness of Debtor's incomplete credit application, Signal did not ask Debtor whether she had divulged all her debts nor did Signal require Debtor to add those reported on the credit check to her loan application prior to securing her signature on that document. Further, Signal did not tell Debtor that it had run a credit check nor did it show the results to Debtor. Debtor, however, testified that she assumed that Signal had a credit report available but that she was not aware of what it did or did not show about her credit history.

Signal makes no contention that Debtor attempted to conceal the debts listed on the credit check. Rather, Signal contends that Debtor deliberately failed to disclose a loan she and her husband obtained from Avco Finance for the purchase of furniture after Debtor obtained her first Signal loan. Signal also questions the non-disclosure of a loan Debtor owed to Pennsylvania Higher Education Assistance Agency (PHEAA) for a student debt she had incurred in 1984, and thus prior to her first application to Signal in 1986.

As evidence concerning Debtor's intent, Signal relies in part on the absence of information in a section of the 1987 loan application which states: "Please list all debts and credit obligations of you and of any co-applicant. . . ." The court credits the testimony of the Debtor that the section at issue was not called to her attention specifically and that she was not asked to provide the information requested therein. Both Debtor and Signal agree that the application was completed by a representative of Signal during a telephone call. They

further agree that Debtor first saw the application four days after it was prepared when she visited the Signal office to finalize the loan. Debtor acknowledged that when she was presented with the application, she was asked to review it and to indicate whether the information it contained was correct. After she informed Signal that the items were correct, she signed the document, having made only a cursory review.

The court finds that Signal did not meet its burden of proof that this Debtor intended to deceive Signal Finance. On the date she signed the application, Debtor was aware that Signal had obtained a credit report or other evidence of her various debts because, as part of the refinance, Signal repaid three debts which were not listed on the loan application. Accordingly, Signal failed to establish that it reasonably relied on information supplied by Debtor. Title 11 U.S.C. § 523(a)(2)(B)(iii) states that the use of a writing must be one "on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied". Signal's own credit verification process indicated that this Debtor had not listed all debts on the application but Signal saw fit to make the loan as well as to pay debts which were not on the application but were on the credit report. Therefore, any reliance that this creditor placed on the loan application was not reasonable.

Signal also relies on its calculation of Debtor's debt-to-equity ratio both prior to and after the refinancing of the loan. Signal's representative testified that Signal's policy was to deny loans if debts exceeded sixty percent of monthly net income. Had Debtor disclosed either the Avco or the student loan, she would have been ineligible by application of this formula. However, no representative of Signal ever made known to Debtor that she would be disqualified if she had any other debts outstanding. Had Signal so informed Debtor, its contentions as to intent would have some credence. Moreover, Signal solicited this loan by sending Debtor a letter indicating that she was preapproved for $500.00 worth of credit. Debtor testified that pre-

approval signified to her that a credit check had been made and that the money was there for the asking, provided that she earned a certain annual income, which she did.

Signal failed to prove by clear and convincing evidence that the Debtor caused to be made, or published with the intent to deceive, a materially false writing on which Signal reasonably relied. For these reasons, the debt will be declared dischargeable and the complaint will be dismissed.

An appropriate order will be entered.