

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-10-1995

# In Re: David Louis Cohn

Precedential or Non-Precedential:

Docket 94-1742

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"In Re: David Louis Cohn" (1995). *1995 Decisions.* Paper 129.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/129

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 94-1742


IN RE:  DAVID LOUIS COHN,
Debtor

INSURANCE COMPANY OF NORTH AMERICA,

Appellant

v.

DAVID LOUIS COHN



Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 91-cv-06073)


Argued February 13, 1995
BEFORE:  STAPLETON, GREENBERG and COWEN,
<u>Circuit Judges</u>

(Filed  May 10, 1995  )


Kenneth F. Carobus (argued)
Morris & Adelman
Suite 400
1920 Chestnut Street
P.O. Box 30477
Philadelphia, PA  19103-8477

          Counsel for Appellant
          Insurance Company of North America

Alan M. Seltzer (argued)
Ryan, Russell, Ogden & Seltzer
1100 Berkshire Boulevard
P.O. Box 6219
Reading, PA  19610-0219

          Counsel for Appellee
          David Louis Cohn

OPINION


COWEN, Circuit Judge.

Insurance Company of North America ("INA") objects to the discharge in bankruptcy of a debt owed to it by David Cohn. This appeal turns on the proper interpretation of 11 U.S.C. § 523(a)(2)(B). The bankruptcy court concluded, and the district court affirmed, that INA did not meet its burden of proving that it reasonably relied upon a materially false statement contained in an investor bond application submitted by Cohn, and the debt was therefore dischargeable. Because the bankruptcy court based its decision upon facts that were not in the record, and because the district court acted beyond its authority in making its own factual findings, we will remand the case to the district court with instructions to remand to the bankruptcy court for further fact-finding.


I.

Between September 1984 and September 1985, David Cohn was involved in a business relationship with a financial consultant, Christopher Scutto, an employee of Cigna Individual Financial Services Company ("Cigna Financial Services"). Cohn became interested in a limited partnership known as The Village Apartments Associates Ltd. ("Village Apartments"). In order to become a limited partner, Cohn was required to sign a promissory

note for his share, and to obtain a surety for the note.  On September 12, 1985, Cohn submitted an investor bond application ("the application") to INA, requesting INA to act as a surety on a promissory note in the principal amount of $47,500 which was to be executed between Cohn, as obligor, and the Bank of New York, as obligee.

Cohn relied upon Scutto and his staff to fill out the application and related documentation based upon financial and other information that Cohn had provided to Scutto over the previous year.  After Scutto completed the application, Cohn reviewed it (though he contends that he did not read each page of the various documents), and signed it.

At the top of the application, the first paragraph read:

> FOR THE PURPOSE OF PROCURING CREDIT OR
> GUARANTEE OF CREDIT FROM INSURANCE COMPANY OF
> NORTH AMERICA (SURETY), THE UNDERSIGNED
> FURNISH THIS APPLICATION AND THE INFORMATION
> CONTAINED THEREIN INCLUDING A TRUE AND
> ACCURATE STATEMENT OF THE UNDERSIGNED'S
> FINANCIAL CONDITION AS OF THE DATE OF THIS
> APPLICATION.

Item 9 on the second page of the application requested that the applicant list "Real Estate Registered in own name," and instructed, "See Sched. No. 5."  Scutto indicated in Item 9 that Cohn had real estate valued at $110,000.  Schedule No. 5 required as follows: "The legal and equitable title to all the real estate listed in this statement is solely in the name of the undersigned, except as follows: . . . ."  Two blank lines were then provided for entries by the applicant.  Also in Schedule No.

5, immediately below the two blank lines, the application provided a table for the applicant to fill out, requesting information regarding, inter alia, the description, dimensions, improvements, mortgages or liens, and assessed value of each property.  It is not clear from the application whether this information was requested only regarding real estate not solely in applicant's name, or all real estate to which the applicant holds legal and equitable title.  Neither the two blank lines nor the table were filled in on Cohn's application.[1]

Cohn admits that at the time that he signed the application, he did not own real estate valued at $110,000 registered in his own name.  Cohn testified that before he signed the application, he was assured by Scutto that using the ultimate value of the asset he was seeking to purchase as part of his present net worth, when applying for credit to purchase that very same asset, was "an accepted procedure."  Scutto testified that such a practice was followed by other individuals in his office.

Scutto submitted the application to INA in October 1985, and it was accepted later that month.  In the interim, INA made no inquiry of Cohn or his financial consultant regarding any aspect of the real estate questions in the application, including the listing of real estate registered in Cohn's own name and the absence of any mortgages, liens or other indebtedness as reflected in Schedule No. 5.  INA did obtain information from a

---

[1].  For clarity, the application is made an addendum to this opinion.

credit report that indicated that Cohn had no mortgage, real estate payments, or other indebtedness.

INA became the surety for the promissory note and Cohn became a limited partner in the Village Apartments. Scutto was compensated for the sale by Village Apartments. Cohn executed an indemnification agreement under which Cohn agreed to indemnify INA against any loss INA might incur in the event that Cohn defaulted on the promissory note. Thereafter, Cohn defaulted on the note and a claim was made against INA based upon the investor bond. Cohn later filed a Chapter 7 proceeding under the provisions of the Bankruptcy Code, and listed INA in his schedule of creditors whose debts were to be discharged. INA filed a complaint with the bankruptcy court seeking an exception to Cohn's discharge for the indebtedness arising from this transaction.

The bankruptcy court found that INA did not meet its burden of proof to demonstrate that it reasonably relied on a materially false statement when it accepted Cohn's application and refused to exempt Cohn's indebtedness to INA from discharge. Insurance Company of North America v. Cohn (In re Cohn), 131 B.R. 19 (Bankr. E.D. Pa. 1991). While finding that Cohn's application contained a materially false statement regarding his financial condition, the bankruptcy court based its ultimate conclusion on its finding that Cigna Financial Services is the parent company of INA. The court found "troublesome" that INA was "attempting to have a debt declared nondischargeable based upon the fraud masterminded by an employee of its own parent company." Id. at

21.  The bankruptcy court held that "any reliance placed upon the application by INA was done at its own risk and must be found unreasonable."  Id.  Further, the court concluded that INA must be estopped from having the debt found nondischargeable because it had "unclean hands" in that an "employee of INA's parent company" was the ultimate source of the wrongdoing.  Id. at 21–22.

The district court affirmed the order of the bankruptcy court, but on different grounds.  It found that INA did not reasonably rely on the statement in Item 9:

> in that the most reasonable reading of [Schedule No. 5] is that it provides blank lined spaces for the applicant to note which scheduled properties are not held solely in his name but otherwise requires the applicant to specify, inter alia, the location, dimensions, liens against and assessed value of each property and indeed it being illogical to assume that a lender or guarantor would require such information only for collateral not solely registered to an applicant, in that the failure of the debtor to identify any property on schedule 5 was sufficient to trigger further inquiry by a reasonable lender or guarantor, see In re Martz, 88 B.R. 663, 674 (E.D. Pa. 1988), and in that a simple request of the debtor to identify the property listed on line 9 would have revealed that this was the value of the property the debtor proposed to acquire by investment of the borrowed funds.

Insurance Company of North America v. Cohn (In re Cohn), No. 91–6073 (E.D. Pa. June 28, 1994) (order denying appeal and dismissing action).  This appeal followed.

II.

The district court had jurisdiction to hear this case pursuant to 28 U.S.C. § 158(a). Our jurisdiction rests on 28 U.S.C. § 1291 and 28 U.S.C. § 158(d).

As a proceeding tried initially before the Bankruptcy Court for the Eastern District of Pennsylvania, the standard of review for the district court is governed by Rule 8013 of the Bankruptcy Rules, which provides:

> On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Bankruptcy Rule 8013.

Our review of the district court's order is plenary because in bankruptcy cases the district court sits as an appellate court. Brown v. Pennsylvania State Employees Credit Union, 851 F.2d 81, 84 (3d Cir. 1988) (citing Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101-02 (3d Cir. 1981)). We review the findings of fact of the bankruptcy court only for clear error. Id. (citing In re Morrissey, 717 F.2d 100, 104 (3d Cir. 1983)). Findings of fact by a trial court are clearly erroneous when, after reviewing the evidence, the appellate court is "left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573, 105 S. Ct. 1504, 1511 (1985) (citation omitted).

We have plenary review over questions of law. Epstein Family Partnership v. Kmart Corp., 13 F.3d 762, 765-66 (3d Cir. 1994). It is error for a district court, when acting in the capacity of a court of appeals, to make its own factual findings. Universal Minerals, 669 F.2d at 104.

III.

The overriding purpose of the Bankruptcy Code is to relieve debtors from the weight of oppressive indebtedness and provide them with a fresh start. Exceptions to discharge are strictly construed against creditors and liberally construed in favor of debtors. See, e.g., United States v. Stelweck, 108 B.R. 488, 495 (Bankr. E.D. Pa. 1989). Title 11, section 523(a)(2) of the United States Code provides for exceptions to discharge as follows:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual from any debt --
> . . .
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by --
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
> (B) use of a statement in writing --
> (i) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive . . . .

11 U.S.C. § 523(a)(2) (1988). The burden of proving that a debt is nondischargeable under § 523(a) is upon the creditor, who must establish entitlement to an exception by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 287-88, 111 S. Ct. 654, 659-60 (1991). Thus, pursuant to § 523(a)(2)(B), INA must prove that Cohn used a statement in writing: (1) that is materially false; (2) respecting his financial condition; (3) upon which INA reasonably relied; and (4) with the intent to deceive INA.

## A.

The bankruptcy court held that "[i]t cannot be disputed that debtor's application contains a materially false statement regarding debtor's financial condition." Cohn, 131 B.R. at 21. The court noted Cohn's admission that at the time he executed the application he did not have legal and equitable title to real estate valued at $110,000. Id. Citing Century Bank of Pinellas County v. Clark (In re Clark), 1 B.R. 614, 617 (Bankr. M.D. Fla. 1979), the bankruptcy court held that Cohn's financial statement was sufficiently overstated such that it was a materially false statement within the meaning of § 523(a)(2)(B)(i). Id.

While Cohn does not deny that his statement was false, he asserts that the statement was not material. He cites Landmark Leasing Inc. v. Martz (In re Martz), 88 B.R. 663, 671

(Bankr. E.D. Pa. 1988) and Afsharnia v. Roland (In re Roland), 65 B.R. 1003, 1006 (Bankr. D. Conn. 1986) for the proposition that the "materially false" component of § 523(a)(2)(B)(i) requires a showing both that the statement was in fact false, and that the falsehood was material to the creditor's decision to enter into the transaction. We note, however, that In re Bogstad, 779 F.2d 370 (7th Cir. 1985), the case upon which both the Martz and Roland courts rely, in actuality has a narrower holding than the proposition asserted by Cohn. The Court of Appeals for the Seventh Circuit wrote:

> Material falsity has been defined as "an important or substantial untruth." A recurring guidepost used by courts has been to examine whether the lender would have made the loan had he known of the debtor's true financial condition.

Bogstad, 779 F.2d at 375 (citations omitted) (emphasis added). Thus, it would appear that the effect of the falsity on the creditor's decision to enter into the transaction should be used only as one indicia of the materiality of the falsity; it is not in fact a second requirement of § 523(a)(2)(B)(i).

The materiality prong of the "material falsehood" test includes a certain reliance component. Under a materiality analysis, we refer to a creditor's reliance upon a false statement in the sense that an untruth can be considered important (or "material") if it influences a creditor's decision to extend credit. However, a statement can still be material if it is so substantial that a reasonable person would have relied upon it, even if the creditor did not in fact rely upon it in the

case at hand. Cf. Kungys v. United States, 485 U.S. 759, 771, 108 S. Ct. 1537, 1547 (1988) (materiality turns on whether the misrepresentation "was predictably capable of affecting, i.e., had a natural tendency to affect, the official decision"); United States v. Keefer, 799 F.2d 1115, 1127 (6th Cir. 1986) ("[T]he test for materiality is not whether the agency actually relied on the false statement, but whether the statement was capable of influencing, or had a natural tendency to influence, the agency's decision.").

We note that there is also a reliance component in the "reasonable reliance" requirement of § 523(a)(2)(B)(iii). See discussion below in part III B. These are certainly overlapping concepts. Section 523(a)(2)(B)(iii), however, requires that the creditor actually rely on the debtor's statement. Accordingly, if it were reasonable to rely on a debtor's statement, but the creditor did not in fact rely upon the false statement, (B)(iii) would not be satisfied.

We recognize that the distinction between the two reliance concepts is somewhat subtle, and to a degree, the reliance concept in (B)(i) is subsumed within (B)(iii). However, it is important to keep the distinction intact in light of the long-established cannon of statutory construction that in construing a statute, courts are obliged to give effect, if possible, to every word Congress used. See, e.g., Gustafson v. Alloyd Company, Inc., __ U.S. __, 115 S. Ct. 1061, 1069 (1995) ("the Court will avoid a reading which renders some words

altogether redundant"); United States v. Menache, 348 U.S. 528, 538–39, 75 S. Ct. 513, 519–20 (1955).

The element of materiality under § 523(a)(2)(B)(i) is a question of law.  Cf. United States v. Greber, 760 F.2d 68, 73 (3d Cir. 1985) (materiality element of the crime of making a false statement pursuant to 18 U.S.C. § 1001 is a question of law); United States v. Slawik, 548 F.2d 75, 79 (3d Cir. 1977) (in a perjury prosecution materiality is "a question of law, decision upon which is reserved for the court").  See also United States v. Gaudin, 28 F.3d 943, 955–65 (9th Cir. 1994) (Kozinski, J., dissenting) (surveying case law regarding whether materiality is a question of fact or law).  As such, we review materiality under a plenary standard of review.  See, e.g., Epstein Family Partnership, 13 F.3d at 765–66.

We believe that the material falsity element has sufficiently been established.  INA offered the testimony of its employee, Steven Hollberg, who gave his expert opinion that the bond would not have been issued if the application had not indicated that Cohn held $110,000 in real estate.  Cohn contends that Hollberg's conclusion is speculative and unsupported since he did not participate in the development of the underwriting criteria governing investor bonds, he did not specifically review or have any input in determining Cohn's eligibility, nor did he participate in INA's decision to act as surety.

We are unpersuaded by Cohn's arguments.  Because the element of materiality under § 523(a)(2)(B)(i) is an objective one, our determination does not have to turn on Hollberg's

credibility regarding INA's <u>actual</u> reliance on the false statement. It is sufficient that the false statement is one that is capable of influencing, or had a natural tendency to influence, a creditor's decision. As INA points out, Cohn's application indicated a total net worth of $259,000. The false asset of $110,000 constituted a substantial portion of his purported net worth. Under the circumstances of this case, we find it fully logical and reasonable that such a substantial sum could have influenced a creditor's decision to enter into such a transaction. We conclude that the bankruptcy court did not err in its determination that Cohn's financial statement was both false and material.

### B.

Both the bankruptcy court and the district court found that INA did not meet its burden of proof on the "reasonable reliance" component of § 523(a)(2)(B)(iii). The courts, however, based their determinations on different grounds and we address their analyses separately.

### 1.

> The bankruptcy court held:
> [W]e find troublesome the fact that INA is attempting to have a debt declared nondischargeable based upon the fraud masterminded by an employee of its own parent company. For this reason, we conclude that any reliance placed upon the application by INA was done at its own risk and must be found unreasonable. <u>See</u>, <u>Signal Consumer Discount Company v. Malachosky (In re</u>

Malachosky), 98 B.R. 222, 224 (Bankr. W.D. Pa. 1989).

Cohn, 131 B.R. at 21.  In Signal, cited by the bankruptcy court, the same corporation that extended the loan also knew that the written statement of the debtor's financial condition was false. Signal, 98 B.R. at 223.  Nonetheless, the corporation tried to rely upon the truth of the written statement.  Id. at 223-24. The Signal court found that the creditor had not reasonably relied upon the statement.  Id. at 224.  If INA knew that the written statement was untrue prior to granting the investor bond, then it, like the creditor in Signal, could not have reasonably relied upon the written statement.  Indeed, the bankruptcy court based its holding on the factual predicate that Cigna Financial Services is the parent company of INA.  The bankruptcy court's determination, however, is flawed for two reasons.  First, we find that the trial record lacks sufficient facts from which the bankruptcy court could determine the exact relationship between Cigna Financial Services and INA.  Second, there is no basis in the record to impute the knowledge of a Cigna Financial Services employee to INA.

There is little evidence in the record regarding the relationship between the two companies.  INA maintains that there are a number of "Cigna" companies:  Cigna Company is the parent, with subsidiaries including Cigna Holding, Inc., INA Holdings, Inc., Insurance Company of North America, Cigna Investment Group, Connecticut General Life, Ins. and Cigna Individual Financial

Services, Inc.  The following testimony of Hollberg reflects how confusing and muddled this issue is:

> BY MR. SELTZER:
> Q:  Now, does Wade Hill Services of INA have any relationship to Cigna Financial Services?
> A:  I believe INA is related to Cigna as a subsidiary of Cigna.
> Q:  But Cigna, in fact, owns INA; is that correct?
> A:  That is correct.
> Q:  Okay.
>     THE COURT:     And they own Connecticut General, right?
>     THE WITNESS:     That's the company --
>     THE COURT:     What's left of it.
>     THE WITNESS:     Yeah, exactly.
> BY MR. SELTZER:
> Q:  Okay.  And based on the information you have in your file, do you know who if anybody Mr. Scutto was working with or for at the time that you had dealings with him relative to the financial application and investor bond?
> A:  It's evident just from that letter that he was working for Cigna as a financial analyst, I believe it says.
> Q:  That being the parent company of INA?
> A:  That's correct.
> Q:  Okay.  But you've never had any direct contact with Mr. Scutto at all; right?
> A:  No, I have not.

App. at 112a-13a.

We are unable to determine from the record the relationship between INA and Cigna Financial Services; it is unclear from Hollberg's testimony which "Cigna" is the parent company of INA -- Cigna Company or Cigna Financial Services.  It is not surprising that the relationship between INA and Cigna Financial Services remained unresolved since the issue was

neither raised in the pleadings nor briefed before the bankruptcy court.

Other testimony by Hollberg and Scutto indicated that there was no contact or relationship between Cigna Financial Services and INA regarding the transaction and the real estate value.[2]  App. at 91a, 96a, 123a-24a.  As INA correctly contends, only when the corporate veil can be pierced can INA be said to have knowledge of the falsity of the written statement.  Well-established precedent holds that in order for one company to be held responsible for the actions of a related company, it is necessary that there be sufficient facts to pierce the corporate veil.  See, e.g., Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1373 (3d Cir. 1992) (statement of subsidiary may be attributed to its corporate parent where parent dominates activities of subsidiary), cert. denied, __ U.S. __, 113 S. Ct. 1262 (1993); Culbreth v. Amosa (Pty) Ltd., 898 F.2d 13, 14 (3d Cir. 1990) (party seeking to pierce corporate veil must establish that controlling corporation wholly ignored separate status of controlled corporation and so dominated and controlled its affairs that separate existence was mere sham); A.K. Nahas Shopping Center, Inc. v. Reitmeyer (In re Nahas), 161 B.R. 927, 932-33 (Bankr. W.D. Pa. 1993).  The record is conspicuously lacking any such facts.[3]

---

[2].  Scutto testified that he had contact with INA regarding Cohn's liquidity.  This information exchange does not change the fact that INA was not aware of the false real estate value.

[3].  In addition to basing its determination of unreasonable reliance on the putative relationship between the Cigna and INA,

2.

The district court affirmed the bankruptcy court's holding of unreasonable reliance upon a false statement, but based its determination on different grounds. The district court found that INA unreasonably relied upon the application because the failure of Cohn to identify any property on Schedule No. 5 was sufficient to trigger further inquiry by a reasonable lender or guarantor. The district court predicated its holding on its finding that:

> the most reasonable reading [of Schedule No. 5] is that it provides blank lined spaces for the applicant to note which scheduled properties are not held solely in his name but otherwise requires the applicant to

(..continued)
the bankruptcy court also concluded that INA must be estopped on equitable grounds from attempting to have the debt found nondischargeable, based upon the same factual predicate. The bankruptcy court held:

> Furthermore, we conclude that INA must be estopped from attempting to have this debt found nondischargeable due to its unclean hands. It must be remembered that bankruptcy courts are essentially courts of equity, and as such, should render decisions with equitable considerations in mind. We believe that it would be extremely unfair to burden debtor with a finding that this debt is nondischargeable when the ultimate source of the wrongdoing can be traced directly to Mr. Scutto, an employee of INA's parent company.

Cohn, 131 B.R. at 21-22. This holding also cannot stand, based on the same factual flaws as the unreasonable reliance determination. There is insubstantial record evidence regarding the exact relationship between Cigna Financial Services and INA, as well as whether knowledge of a Cigna Financial Services employee can be imputed to INA.

> specify, <u>inter</u> <u>alia</u>, the location,
> dimensions, liens against and assessed value
> of each property and indeed it [is] illogical
> to assume that a lender or guarantor would
> require such information only for collateral
> not solely registered to an applicant.

<u>Cohn</u>, No. 91-6073 (order denying appeal and dismissing action).
The district court opined that had INA requested Cohn to identify
the property in Item 9 and explain this inconsistency within the
application, Cohn would have revealed that the value listed in
Item 9 was the property Cohn proposed to acquire by investment of
the borrowed funds. <u>Id.</u>

The district court appears to have applied the correct
standard in determining a creditor's reasonable reliance. The
reasonableness of a creditor's reliance under § 523(a)(2)(B) is
judged by an objective standard, i.e., that degree of care which
would be exercised by a reasonably cautious person in the same
business transaction under similar circumstances. <u>Martz</u>, 88 B.R.
at 673; <u>Lesman v. Mitchell (In re Mitchell)</u>, 70 B.R. 524, 527
(Bankr. N.D. Ill. 1987); <u>Signal Finance of Ohio v. Icsman (In Re
Icsman)</u>, 64 B.R. 58, 62 (Bankr. N.D. Ohio 1986).

A determination of reasonable reliance requires
consideration of three factors: (1) the creditor's standard
practices in evaluating credit-worthiness (absent other factors,
there is reasonable reliance where the creditor follows its
normal business practices); (2) the standards or customs of the
creditor's industry in evaluating credit-worthiness (what is
considered a commercially reasonable investigation of the
information supplied by debtor); and (3) the surrounding

circumstances existing at the time of the debtor's application for credit (whether there existed a "red flag" that would have alerted an ordinarily prudent lender to the possibility that the information is inaccurate, whether there existed previous business dealings that gave rise to a relationship of trust, or whether even minimal investigation would have revealed the inaccuracy of the debtor's representations). See Coston v. Bank of Malvern (In re Coston), 991 F.2d 257, 261 (5th Cir. 1993) (en banc); Mitchell, 70 B.R. at 527-28; Martz, 88 B.R. at 673-74.

We agree with the majority of courts of appeals which have concluded that the determination of reasonable reliance by a lender under § 523(a)(2)(B) is factual in nature and insulated by the clearly erroneous standard of review. See Coston, 991 F.2d at 260-61; Bank One, Lexington, N.A. v. Woolum (In re Woolum), 979 F.2d 71, 75 (6th Cir. 1992), cert. denied, ___ U.S. __, 113 S. Ct. 1645 (1993); In re Bonnett, 895 F.2d 1155, 1157 (7th Cir. 1989); Trattoria, Inc. v. Lansford (In re Lansford), 822 F.2d 902, 904 (9th Cir. 1987); Leadership Bank, N.A. v. Watson (In re Watson), 958 F.2d 977, 978 (10th Cir. 1992); Collins v. Palm Beach Savings & Loan (In re Collins), 946 F.2d 815, 817 (11th Cir. 1991).

The district court based its holding of unreasonable reliance upon a number of factual predicates: (1) that the most reasonable reading of Schedule No. 5 is that the chart requires the applicant to specify information regarding all property that the applicant owns (not just property not solely registered in the applicant's name); (2) that Cohn's failure to identify any

property in Schedule No. 5 was sufficient to trigger further inquiry by a reasonable lender or guarantor (i.e., the existence of a "red flag"); and (3) that a simple request of Cohn to identify the property listed in Item 9 would have revealed that Cohn did not hold legal or equitable title to $110,000 of real estate.

While the district court may have applied the correct legal standard in determining INA's unreasonable reliance, the court acted beyond its authority in making its own factual findings. As we held in <u>Universal Minerals</u>:

> The district court did not set aside any of these basic findings . . . . The district court chose, however, to emphasize other facts not mentioned in the bankruptcy court's opinion and to draw opposing inferences from the record. In doing so, the district court erred. A reviewing court may not substitute its own findings for those of the primary tribunal merely because it finds other inferences more likely.

669 F.2d at 104. Where, as here, the record is susceptible to more than one reasonable reading, factual findings are only properly made by the bankruptcy court after a hearing where both parties have an opportunity to offer such evidence as they deem appropriate. The bankruptcy court failed to make factual findings on these matters. We have consistently deferred to the fact-finding duties of the bankruptcy court and have held that where sufficient facts have not been developed by that court, the proper response is to remand. <u>See</u>, <u>e.g.</u>, <u>Wheeling-Pittsburgh Steel Corp. v. McCune</u>, 836 F.2d 153, 163 (3d Cir. 1987); <u>In re</u>

Abbotts Dairies of Pa., Inc., 788 F.2d 143, 150-51 (3d Cir. 1986).

Accordingly, we will remand this matter to the district court for that court to further remand the case to the bankruptcy court for a determination of the reasonableness of INA's reliance upon the application, based on either one of two theories: (1) whether there are sufficient facts, consistent with established Third Circuit precedent, to pierce the corporate veil and hold INA responsible for the actions and knowledge of a Cigna Financial Services employee; and/or (2) whether after considering the creditor's standard practices in evaluating credit-worthiness, the standards of the creditor's industry in evaluating credit-worthiness, and the surrounding circumstances existing at the time of the debtor's application, INA reasonably relied upon Cohn's written statements in his application.

C.

Because both the bankruptcy court and the district court held that INA unreasonably relied upon Cohn's application, neither court reached the "intent to deceive" element of § 523(a)(2)(B)(iv). The legal parameters of intent to deceive may arise on remand and, accordingly, we deem it instructive and expedient to set forth directions for future guidance.

We acknowledge that because a debtor will rarely, if ever, admit that deception was his purpose, this fourth element of § 523(a)(2)(B) is extremely difficult for a creditor to prove by direct evidence. Thus, we join with other courts, including

the Courts of Appeals for the Sixth, Tenth, and Eleventh Circuits, in holding that the intent to deceive can be inferred from the totality of the circumstances, including the debtor's reckless disregard for the truth. See, e.g., Equitable Bank v. Miller (In re Miller), 39 F.3d 301, 305 (11th Cir. 1994) ("A bankruptcy court may look to the totality of the circumstances, including the recklessness of a debtor's behavior, to infer whether a debtor submitted a statement with intent to deceive."); Driggs v. Black, (In re Black), 787 F.2d 503, 506 (10th Cir. 1986) ("The creditor must establish that a materially false writing was made knowingly with the intent to deceive . . . . However, the requisite intent may be inferred from a sufficiently reckless disregard of the accuracy of the facts."); Martin v. Bank of Germantown (In re Martin), 761 F.2d 1163, 1167 (6th Cir. 1985) ("The standard . . . is that if the debtor either intended to deceive the Bank or acted with gross recklessness, full discharge will be denied."). We hold that a creditor can establish intent to deceive by proving reckless indifference to, or reckless disregard of, the accuracy of the information in the financial statement of the debtor when the totality of the circumstances supports such an inference.

INA seeks to hold Cohn responsible for his agent Scutto's misrepresentations. INA argues that when an agent commits a fraud within the scope of the agency, that fraud is imputed to the principal for purposes of § 523(a)(2)(B)(iv). Cohn maintains that within an agency relationship, "intent to deceive" can only be inferred when a principal is recklessly

indifferent to his agent's acts. While he does not dispute the applicability of the agency relationship, Cohn argues that he had no reason to doubt Scutto's recommendations regarding the INA investment or the method used to fill out the application. At the time Cohn was asked to sign the application, he questioned Scutto about the $110,000 listed for real estate on Item 9 of the application. Scutto advised Cohn that the $110,000 listed on Item 9 represented the projected value of the limited partnership investment and that this approach had been the practice of other individuals in the office.

We agree with INA that under an agency scenario, common law principles of agency law would probably dictate the imputation of an agent's fraud to a principal under a § 523(a)(2)(B)(iv) analysis. If principles of imputability applied, Cohn could be held responsible for Scutto's statements and intent to deceive. However, under the facts of this case, agency law is not directly applicable.

In the case at hand, Cohn signed the application; Cohn made representations to INA; INA relied on Cohn's representations. The third party -- INA -- never relied upon anything Cohn's agent said on behalf of Cohn. Because INA relied only upon the principal's representations, agency law is irrelevant to this case. What Cohn relied upon -- the advice of Scutto -- is relevant only to the question of his own state of mind. Accordingly, on remand the question remains whether Cohn, in light of the totality of the circumstances, intended to deceive, or was reckless in making the representations.

Last, we find of interest discussion in certain bankruptcy courts within this circuit regarding a rebuttable presumption of intent to deceive that arises upon the making of a false financial statement, see, e.g., Horowitz Finance Corp. v. Hall (In re Hall), 109 B.R. 149, 155 (Bankr. W.D. Pa. 1990); First Seneca Bank v. Galizia (In re Galizia), 108 B.R. 63, 67 (Bankr. W.D. Pa. 1989); Signal Consumer Discount Co. v. Hott (In re Hott), 99 B.R. 664, 667 (Bankr. W.D. Pa. 1989), and a shifting burden of production of evidence upon a creditor's establishing a prima facie case, see, e.g., Beneficial Consumer Discount Co. v. Russell (In re Russel), 18 B.R. 325, 327 (Bankr. E.D. Pa. 1982) (once creditor satisfies the first three elements of § 523(a)(2)(B), a prima facie case is established and the debtor then has the burden of going forward with evidence on the question of intent to deceive); Bucks County Teachers' Federal Credit Union v. McVan (In re McVan), 21 B.R. 632, 634 (Bankr. E.D. Pa. 1982); Wybro Federal Credit Union v. Mann (In re Mann), 22 B.R. 306, 308 (Bankr. E.D. Pa. 1982).[4]  We understand that

---

[4].  We note that in construing § 14, sub. c(3) of the now repealed Bankruptcy Act, 11 U.S.C. § 32(c)(3), this Court has held that "once it is established that a bankrupt has benefitted from his issuance of a materially false written statement respecting his financial condition, the burden is then on him to show by way of excuse that his conduct was not attended by a blameworthy attitude or state of mind."  In re Barabato, 398 F.2d 572, 574 (3d Cir. 1968); see also In the Matter of Perlman, 407 F.2d 861, 862 (3d Cir. 1969) ("reasonable and sufficient grounds were laid at the hearing to show the falsity of the statement and the credit relied thereon, and the burden thereupon shifted to the bankrupt to prove by competent evidence that he had not committed the offense charged").  Section 14, sub. c(3) of the repealed act has been incorporated into 11 U.S.C. § 727(a)(4), the current provision pertaining to general discharge.  Whatever

these bankruptcy courts were motivated to formulate the presumption and shifting burdens of persuasion in order to assist creditors in proving the elusive element of a debtor's intent.

As a preliminary matter, we are not aware of any courts outside of the Eastern and Western Districts of Pennsylvania that have utilized a shifting burdens approach. Further, we conclude that it is not necessary to utilize a presumption of intent or a shifting burden of production in processing objections to the discharge of a debt. We observe that in other areas of commercial litigation in which fraud is alleged, courts have not utilized a shifting burden of production. A shifting burden is no more necessary in the realm of discharge in bankruptcy than in any other area of commercial litigation in which fraud is alleged. It is sufficient that fraud must be pled and proven with particularity. <u>See</u> Fed. R. Civ. P. 9(b).[5] Thus, the

(..continued)
precedential value our prior interpretations of the former "false financial statement" exception to general discharge has to current § 727(a)(4), it does not extend to our present interpretation of § 523(a)(2). <u>See</u>, <u>e.g.</u>, 4 Collier on Bankruptcy ¶ 727.01[1], at 727-6 n.5 (15th ed. 1985) ("The concept of nondischargeability of a debt under section 523 is not to be confused with denial of discharge under section 727. It is entirely possible for a debtor with nondischargeable debts to receive a discharge."); <u>Fluehr v. Paolino (In re Paolino)</u>, 75 B.R. 641, 647-48 (Bankr. E.D. Pa. 1987); <u>Citizens State Bank of Maryville v. Walker (In re Walker)</u>, 53 B.R. 174, 176-182 (Bankr. W.D. Mo. 1985).

[5]. Rule 9 of the Federal Rules of Civil Procedure provides:

> (b) **Fraud, Mistake, Condition of the Mind.**
> In all averments of fraud or mistake, the
> circumstances constituting fraud or mistake
> shall be stated with particularity. Malice,
> intent, knowledge, and other condition of
> mind of a person may be averred generally.

creditor at all times retains both the burden of proof and the burden of production regarding all four elements of § 523(a)(2)(B).

We believe that the standards adopted today (i.e., that "intent to deceive" includes both recklessness and subjective intent and that it is not appropriate to use a shifting burdens analysis) achieve the preferable balance between a creditor's difficult burden of proof and the underlying purpose of bankruptcy law to provide the debtor with a "fresh start."  Upon remand, if the bankruptcy court determines that INA reasonably relied upon the application and thereby reaches the element of intent to deceive, it should proceed to determine intent to deceive in accordance with the principles we have articulated today.

IV. CONCLUSION

For the foregoing reasons, the order of the district court affirming the judgment of the bankruptcy court will be reversed.  We will remand this matter to the district court with instructions that it remand the case to the bankruptcy court for further fact-finding and determinations on the issues of reasonable reliance and intent to deceive, pursuant to 11 U.S.C. § 523(a)(2)(B), in accordance with the legal standards articulated in this opinion.

(..continued)
Fed. R. Civ. P. 9(b).