**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 23-3061

———————

In re:  VINCENT A. PIAZZA, III,
aka Vincent Anthony Piazza, III,
Debtor

Patricia Elliott,
                              Appellant
v.

Vincent A. Piazza, III

———————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3:22-cv-01808)
U.S. District Judge: Honorable Malachy E. Mannion

———————

Submitted Under Third Circuit L.A.R. 34.1(a)
December 2, 2024

———————

Before: SHWARTZ, MATEY, and McKEE, <u>Circuit Judges</u>

(Filed:  December 4, 2024)

———————

OPINION[*]

———————

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

SHWARTZ, Circuit Judge.

Patricia Elliott appeals the District Court's order upholding the Bankruptcy Court's ruling that the debt Vincent A. Piazza, III owed her was dischargeable and not subject to the exception in 11 U.S.C. § 523(a)(2)(B). For the following reasons, we will affirm.

I

A

In 2011, Elliott and Piazza orally agreed to (1) allow Piazza and his wife to use Elliott's credit cards for business and personal purchases, and (2) share the credit card rewards, so long as Piazza paid the charges.

Throughout early 2012, Piazza charged tens of thousands of dollars on the cards and made multiple timely payments for the charges. After a few months, the cards had an unpaid balance of $33,951.05.

Piazza then asked Elliott to request a credit limit increase. Elliott agreed to do so in exchange for some sort of "security" to ensure payment. App. 109. Piazza responded in an email that his business had "a little over [$]1.5 million worth of work on the books over the next 12 months," and that he had "a ton of equity in all 6 properties [he] own[ed]," which he would sell to make the payments if necessary. App. 168.

Piazza continued to use the cards, charging hundreds of thousands of dollars, and making payments of similar magnitude. Piazza fell behind again, however, leaving the

2

cards with unpaid balances of over $60,000. Piazza offered various excuses for his non-payment but assured Elliott that he would make full payment. Despite these promises, Piazza did not keep up with the payments.

Elliott filed a breach of contract action against Piazza in state court and obtained three judgments totaling $82,766.06, which reflected the unpaid balances. Piazza thereafter filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Middle District of Pennsylvania, seeking to discharge his debts, including the judgments he owed to Elliott.

B

Elliott initiated an adversary proceeding in the Bankruptcy Court seeking, among other things, a declaration that, under 11 U.S.C. § 523(a)(2)(B), Piazza could not discharge the state court judgments owed to her because Piazza had accrued such debts by deceiving Elliott about his ability and intent to pay for the credit card charges.[1]

The Bankruptcy Court held a trial at which Elliott presented evidence that Piazza made various representations to her concerning his real estate holdings and receivables.[2]

---

[1] Elliott has waived any argument that the Bankruptcy Court erred in holding that the judgments were not dischargeable under 11 U.S.C. § 523(a)(2)(A), In re Piazza, 645 B.R. 724, 729-30 (Bankr. M.D. Pa. 2022), because she did not appeal that conclusion to the District Court or us, see, e.g., Travitz v. Ne. Dep't ILGWU Health & Welfare Fund, 13 F.3d 704, 711 (3d Cir. 1994) ("When an issue is not pursued in the argument section of the brief, the appellant has abandoned and waived that issue on appeal.").

[2] Specifically, Piazza represented to her that he owned "six properties" with "a ton of equity," App. 110-11, and that he would make paying off the card balances his "first

In response, Piazza elicited testimony from Elliott that she "relied on past history, and all the work that [she] knew that [Piazza] had," in deciding to seek a credit limit increase. App. 111.

Elliott also sought to introduce evidence that, though Piazza stated in a February 2014 letter that he "ha[d] been experiencing serious financial distress d[ue] to large unpaid invoices on two commercial projects," no such unpaid invoices existed. App. 173. Specifically, Elliott sought to introduce records purporting to show that, as of 2013, Piazza had in fact been fully paid on one of the projects. The payment records were attached to a submission entitled "Affidavit and Certification of Bradley Strahl (the Affiant) Fed. R. Evid. 803(6); 902(11) Records of Regularly Conducted Activity," which stated that the affiant "served in various managerial roles" at the company, he was familiar with the payment records, and such records were kept in the ordinary course of business. App. 332-34 (emphasis omitted). Piazza moved to exclude the documents as hearsay. In response, Elliott argued that the documents were meant to rebut Piazza's statements about his receivables but did not orally argue that the documents were not hearsay or subject to a hearsay exception. The Court excluded the documents, explaining

priority." App. 171. Although Elliott contended that these were intentionally false representations, she admitted that she did not have evidence that when Piazza made his statements to her about his properties or receivables they were false. The Bankruptcy Court determined that "Elliot failed to contradict [that] Piazza's testimony . . . w[as] true as of the date he represented to her" the number of properties he owned and his equity in them. In re Piazza, 645 B.R. 724, 732 n.12 (Bankr. M.D. Pa. 2022).

that no hearsay exception applied and that it "d[id]n't know how [it] could let in [evidence] of this nature without giving [Piazza] an opportunity to cross-examine." App. 124.

After trial, the Bankruptcy Court granted judgment to Piazza, holding that the state court judgments were dischargeable because "the record is devoid of any evidence indicating that Piazza intended to deceive Elliott in writing or otherwise in order to retain access to the [c]ards despite his non-payment." In re Piazza, 645 B.R. 724, 731 (Bankr. M.D. Pa. 2022).

The District Court affirmed, holding that the Bankruptcy Court (1) correctly excluded the Strahl Affidavit, in part, because Elliott forfeited any argument that the Strahl affidavit was a self-authenticating business record; and (2) properly found the debts dischargeable because Piazza lacked the intent to deceive Elliott in his representations to her. Elliott v. Piazza, No. 22-01808, 2023 WL 7224161, at *2-5 (M.D. Pa. Nov. 2, 2023).

Elliott appeals.

## II[3]

Elliott challenges the Bankruptcy Court's exclusion of the Strahl Affidavit from

---

[3] The Bankruptcy Court had jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. The District Court had appellate jurisdiction under 28 U.S.C. §§ 158(a)(1) and 1334. We have appellate jurisdiction pursuant to 28 U.S.C. §§ 158(d) and 1291.

evidence at trial and its conclusion that Piazza's state court judgments were dischargeable. We address each issue in turn.

A[4]

The Bankruptcy Court did not abuse its discretion in excluding the Strahl Affidavit as inadmissible hearsay. Elliott concedes that the affidavit and its exhibit are hearsay but argues that they are admissible as certified business records under Federal Rules of

---

We exercise plenary review of a ruling of a district court sitting as an appellate court in a bankruptcy proceeding. In re Mintze, 434 F.3d 222, 227 (3d Cir. 2006). We review the Bankruptcy Court's findings of fact for clear error, its conclusions of law de novo, and its exercises of discretion for abuses thereof. Id. at 227–28.

[4] The District Court stated that it reviewed the Bankruptcy Court's exclusion of the Strahl Affidavit for "plain error" because Elliott purportedly failed to preserve her Rule 803(6) and 902 arguments because she did not explicitly argue that it was subject to a hearsay exception, and cited cases applying the plain error rule set forth in Federal Rule of Criminal Procedure 52(b). Elliott, 2023 WL 7224161, at *3-4. Rule 52, however, does not apply in the civil setting. Selkridge v. United of Omaha Life Ins. Co., 360 F.3d 155, 166 n.16 (3d Cir. 2004). Instead, we apply the doctrines of waiver and forfeiture to determine whether an argument was preserved. See, e.g., Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 145-48 (3d Cir. 2017).

Even if Elliott did not recite at oral argument the hearsay exception on which she relied to admit the affidavit, the title and contents of affidavit, which identify the rules and some of the Rule 803(6) requirements, demonstrate that Elliott sought to admit it under Rules 803(6) and 902. This is sufficient to preserve the argument for our review, and thus we will consider whether the Bankruptcy Court abused its discretion in excluding the affidavit as inadmissible hearsay. See Walden v. Georgia-Pac. Corp., 126 F.3d 506, 517-20 (3d Cir. 1997); United States v. Fattah, 914 F.3d 112, 177 (3d Cir. 2019); Fed. R. Evid. 103(a); Fed. R. Civ. P. 46. To the extent the ruling involved a legal interpretation of the Federal Rules of Evidence, we review that part of the ruling de novo. See United States v. Price, 458 F.3d 202, 205 (3d Cir. 2006).

Evidence 803(6)[5] and 902.[6]

Rule 803(6) does not permit the admission into evidence of statements that lack indicia of untrustworthiness. See United States v. Casoni, 950 F.2d 893, 910-13 (3d Cir. 1991); Fed. R. Evid. 803(6)(E) (providing that statements must be excluded if the opponent "show[s] that the source of the information or the method or circumstances of preparation indicate a lack of trustworthiness"). Piazza argued that because the affiant

---

[5] Rule 803(6) provides:
A record of an act, event, condition, opinion, or diagnosis [is not excluded by the rule against hearsay] if:
>    (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>    (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>    (C) making the record was a regular practice of that activity;
>    (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>    (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.
Fed. R. Evid. 803(6).

[6] Elliot relies on both Rule 902(8) and Rule 902(11). Rule 902(8) provides that "[a] document accompanied by a certificate of acknowledgment that is lawfully executed by a notary public or another officer who is authorized to take acknowledgments" is "self-authenticating." Fed. R. Evid. 902(8). Rule 902(11) provides "a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person" is "self-authenticating," if "[b]efore the trial or hearing, the proponent [gives] an adverse party reasonable written notice of the intent to offer the record . . . so that the party has a fair opportunity to challenge [it]." Fed. R. Evid. 902(11). These Rules establish that a document "require[s] no extrinsic evidence of authenticity in order to be admitted." Fed. R. Evid. 902. A party must still satisfy the other evidentiary requirements, such as a hearsay exception under Rule 803, relevance under Rule 401, and concerns of prejudice under Rule 403. See United States v. Browne, 834 F.3d 403, 409 (3d Cir. 2016).

7

(1) worked for a company with whom he had a business dispute, and (2) had not been subject to cross-examination, the testimony was not trustworthy. The Bankruptcy Court agreed, noting that Piazza and the affiant's company "don't exactly have a neutral relationship" and therefore the affidavit must be viewed with "suspicion from the jump." App. 123.

The relationship between a hearsay declarant and the party opposing the statement's admission bears on the statement's trustworthiness and therefore its admissibility under Rule 803(6)(E), especially when that relationship reveals a declarant's "motive to falsify." Casoni, 950 F.2d at 911. Because the affiant may have had such a motive, his testimony carries at least some indicia of untrustworthiness, and the Bankruptcy Court acted within its discretion in barring the Strahl Affidavit after concluding that the hearsay exception in Rule 803(6) did not apply. See id.

B

The Bankruptcy Court also correctly discharged the state court judgments Elliott obtained. A debt that is otherwise dischargeable under the Bankruptcy Code is not dischargeable if the creditor establishes that the money owed was obtained by

> use of a statement in writing . . . (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive.

11 U.S.C. § 523(a)(2)(B). "Exceptions to discharge are strictly construed against creditors and liberally construed in favor of debtors." In re Cohn, 54 F.3d 1108, 1113 (3d Cir. 1995). "[T]he intent to deceive can be inferred from the totality of the circumstances, including the debtor's reckless disregard for the truth." Id. at 1118-19.

The Bankruptcy Court did not clearly err in finding that Elliott failed to prove "that Piazza intended to deceive her at any point while Piazza and his wife were authorized users on her [c]ards," and therefore "failed to establish that the [s]tate [c]ourt [j]udgments are exempted from Piazza's Chapter 7 discharge under 11 U.S.C. § 523(a)(2)(B)." In re Piazza, 645 B.R. at 732. Piazza's continued, albeit inconsistent, payments corroborated his testimony that "he always intended to repay the balances on the [c]ards," and the Bankruptcy Court found this testimony credible. Id. at 731-32. Indeed, as the Bankruptcy Court noted, "Piazza charged approximately $902,000 and made payments of approximately $836,000 between February 2012 and July 2013." Id. at 731. In other words, Piazza paid nearly ninety-three percent of his charges during that period. This evidence supports the Bankruptcy Court's conclusion that Piazza lacked the intent to deceive and supports its ruling that the judgments were dischargeable.

III

For the foregoing reasons, we will affirm.

9