Terry, Respondent, vs. Bartlett, Appellant.

*March 13—April 8, 1913.*

*Real-estate brokers: Right to commissions.*

1. Where an agent employed by the owner of land to procure a purchaser therefor at a specified price produces a person who is unwilling and whom the agent cannot induce to pay the price demanded, the owner may sell to such person at a lower figure without rendering himself liable to the agent for a commission, provided there is no fraud or bad faith on the part of such owner.

2. The owner of land may place it in the hands of as many agents or brokers as he sees fit, so long as no exclusive agency is given; and if one of them produces a customer the owner is at liberty to deal with him and to pay the agreed commission in case of a sale, without ascertaining whether any other agent or broker has offered the property to such customer, the owner being ignorant of such an offer having been made.

3. Plaintiff, who was to receive a commission if he sold defendant's land or procured a purchaser therefor at $60,000, offered the land to a person at that price but was unable to induce him to give more than $42,000. He reported that fact to defendant but did not disclose the name of his customer. Afterwards defendant, without knowing who plaintiff's customer was, sold the land through another agent to said customer for $43,500. *Held*, that plaintiff was not entitled to any commission.

APPEAL from a judgment of the circuit court for Milwaukee county: J. C. LUDWIG, Circuit Judge. *Reversed.*

For the appellant there was a brief by *Miller, Mack & Fairchild,* and oral argument by *A. W. Fairchild.*

*Rollin B. Mallory,* for the respondent.

BARNES, J.    This action is brought by the plaintiff to recover a commission of $870 alleged to be due on account of a sale of property made for the defendant.    The jury returned a verdict in favor of the plaintiff, and from a judgment entered thereon defendant appeals.

There is little dispute in the testimony on material questions.    The plaintiff was employed in August, 1905, by the defendant to sell certain real estate, under the following agreement: "He [defendant] asked me to sell the property and agreed to pay me two per cent. commission if I did so, and told me to ask $60,000."

On November 3, 1910, plaintiff offered the property to David Courtenay, a member of the firm of Courtenay & White, real-estate dealers, and also president of the Northwestern Realty Company, for $60,000.    Shortly thereafter Courtenay made an offer of $42,000.    This offer was communicated to the defendant, but the name of the customer was not disclosed to him.    In response to this offer defendant said he would take $50,000.    Courtenay refused to buy at this price or to raise his offer.    On November 17th defendant advised plaintiff that he might offer the property to his customer at $48,000 and give him one week in which to accept or reject such offer.    Plaintiff acted on this suggestion, but Courtenay persisted in his refusal to raise the offer already made.    A short time prior to November 24th Ferdinand Bartlett, a son of the defendant, called upon the plaintiff and advised him if he could get his customer up to $45,000 he (Ferdinand) would use his influence with his father to get him to accept this sum.    Plaintiff was unable to get Cour-

tenay to raise his offer to $45,000 or in fact to raise it at all, and so advised Ferdinand.

It is undisputed that at no time did the plaintiff disclose to the defendant or to his son who his prospective purchaser was. It is not claimed that plaintiff had any exclusive agency for the sale of the property or that defendant might not place the sale of it in the hands of other agents or sell it himself.

Ferdinand was married, was not living with his father, was employed by one of the Milwaukee trust companies, dickered a little in real estate, had the agency for the sale of his father's real estate, and had himself and in conjunction with one Weller attempted to sell the property in question. Weller also had the agency for the sale of the property for five or six years prior to December, 1910. About the 22d or 23d of November, Weller, knowing that Courtenay or his company had purchased some real estate near the Bartlett property, called upon him in reference to buying this property also. He was advised that negotiations were then being carried on with *Terry* for its purchase, but that they would be at an end by Friday, November 25th. On the following Monday Ferdinand and Weller called on Courtenay and succeeded in securing from him an offer of $43,500, which defendant accepted. On the occasion of this call Ferdinand was first advised that *Terry* had been negotiating with Courtenay. On December 1st defendant signed a contract to sell the property and first learned that Courtenay was *Terry's* customer after this contract was executed. He paid the commission for making the sale to his son.

The foregoing statement embodies the material facts. Where there is any dispute in the evidence, we have given the version of it most favorable to the plaintiff, and we assume that plaintiff's agency did not terminate on November 25th. The principal question before us is: Is the defendant liable to the plaintiff for commission under his contract of employment? The case was submitted to the jury on a general verdict. The court instructed the jury that "the princi-

pal question in the case is this: Was plaintiff the procuring cause of the sale?" The court further instructed the jury as follows:

"When a real-estate agent contracts to procure a purchaser for real estate upon commission, it is not essential that he should bring the purchaser bodily to the owner of the real estate, or disclose to the owner the name of the purchaser before the close of his negotiations with him. What the agent must do is to procure the purchaser through his instrumentality and his efforts, and though the purchaser may not be willing to pay the price which the owner wants for the property, if the purchaser so procured negotiates with the owner, either himself or through another, and the owner voluntarily reduces the price of the property so that a sale is consummated, then the agent or broker is entitled to the commission at the rate specified in the agreement with the owner."

If this is a correct exposition of the law as applied to the facts in this case, then the jury was warranted in returning the verdict which it did. If it is not correct, then it is manifest that no case for recovery was made, because no other theory of liability was suggested and no other theory occurs to us which would sustain a liability.

The respondent relies on the case of *Stewart v. Mather,* 32 Wis. 344, to sustain the claim that the court correctly instructed the jury. There is language used in the decision in that case which tends at least to support the contention of the respondent, if it was intended to lay down a general principle of law applicable to all contracts between a property owner and a broker pertaining to the sale of property regardless of the conditions of the contract of employment. Construing the decision as laying down the law applicable to the facts before the court in that case, the decision does not support the respondent's claim. As is pointed out in the later case of *McArthur v. Slauson,* 53 Wis. 41, 9 N. W. 784, the jury might well have found that the plaintiff did not agree to procure a purchaser at any specific price, but simply one who was willing to pay a price for which the owner would sell.

And it was held in *McArthur v. Slauson* that where an agent is employed to procure a purchaser at a specified price, but one is procured who is not willing to pay the price named, the owner may sell to the purchaser produced at a lower figure, without rendering himself liable for commission, provided there is no fraud or bad faith on his part and the agent is unable to induce his client to pay the price demanded. This decision is placed on the entirely reasonable ground that the agent does not perform his part of the contract by producing such a purchaser and the contingency does not arise which renders the owner liable to pay a commission. The cases of *Ames v. Lamont,* 107 Wis. 531, 83 N. W. 780, and *Bowe v. Gage,* 132 Wis. 441, 112 N. W. 469, are to the same effect. The foregoing rule is subject to the exception, if it is an exception, that where the owner prevents the agent from performing his contract the right to recover is not defeated. *Oliver v. Katz,* 131 Wis. 409, 111 N. W. 509; *O'Keefe v. Stephenson,* 135 Wis. 342, 115 N. W. 805.

The agreement here, we think, was one by which the agent undertook to sell the property at a stated price, in which event he was to receive a commission. The complaint so alleges and the plaintiff's evidence so shows. Manifestly the agent did not fulfil such a contract, because he did not sell the property.

If the agreement be construed as one to procure a purchaser at a specified price, the agent did not fulfil that because he produced no purchaser who was ready and willing to buy at the price named. The purchaser was produced by another agent and at an advanced sum. Defendant might place his property in the hands of as many agents or brokers as he saw fit, so long as no exclusive agency was given. When one of them produced a purchaser he was at liberty to deal with him and to pay the agreed commission in case of a sale, without ascertaining whether any other agent or broker had offered the property to such customer, the owner being ignorant of such an offer having been made.

Even if the contract should be construed as one to bring buyer and seller together at a price satisfactory to the seller, there could be no recovery, because the agent never disclosed the name of his customer to his principal. In fact he advised the principal that the best price he could obtain was $42,000, a sum which was not satisfactory to the defendant, and which was $1,500 less than he sold the property for.

So, viewing the case from any of the three angles from which it might possibly be viewed, we fail to see how the plaintiff has established a cause of action. The court should have directed a verdict for the defendant or else awarded judgment in his favor notwithstanding the verdict.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded with directions to dismiss the complaint.