No. 18,969.

Dr. Phillip P. Pyles *v.* Colorado Land
and Investment Co.

(355 P. [2d] 953)

Decided October 3, 1960.    Rehearing denied October 24, 1960.

Messrs. Newcomer & Douglass, Mr. William L. Pad-
dock, for plaintiff in error.

Mr. Clifton A. Flowers, for defendant in error.

*In Department.*

Opinion by Mr. Justice Moore.

On or about July 19, 1957, Dr. Phillip P. Pyles, defendant in the court below and plaintiff in error here, who will hereafter be referred to as the "owner," signed a contract to sell the Boulder Liquor Store, located just east of the city of Boulder, Colorado, to Emil Karstens and Darrell Backus, to whom we will refer as the "buyers." The agreed purchase price was $62,500.00 plus the cost of the inventory. The owner accepted a down payment from the buyers at that time and the balance of the purchase price was subsequently paid. The Colorado Land and Investment Co., defendant in error to whom we will refer as the "broker," brought this action against the owner to recover a 5% commission on the $62,500.00 sales price.

The broker alleged in its complaint that it had an exclusive listing contract with the owner to sell his liquor store; that the agreed commission to be paid was 5% of the purchase price; that the broker succeeded in interesting Karstens and Backus in purchasing the property; that thereafter the owner sold the business to them directly, without the knowledge of the broker, and that the sale was made by the owner "with knowledge that the plaintiff had introduced the buyers to the business and interested them in buying it." All of the above allegations were denied by the owner and there is sharp conflict in the evidence with relation to much of it. The issues were tried without a jury and the trial court entered judgment in favor of the broker for $3,150.00. The owner seeks reversal of that judgment by writ of error.

The only evidence in the record which tends to establish an oral listing of the property for sale is that offered by an officer of the broker company, whose testimony is, in part, as follows:

"Q. Mr. Vondra, did you ever have any relations or any dealings with Dr. Pyles regarding the sale of the Boulder Liquor Store? A. Yes, I did.

\* \* \*

"Q. All right; what was the gist of the conversation, if

you please? A. He wanted to sell the Boulder Liquor Store and he wanted it very confidentially handled and he stated his price at sixty-five thousand dollars net to him, plus inventory, which he stated would run ten to twelve thousand dollars. He asked what commission we would charge and I advised him that five percent would be the regular commission. I asked him about the rent and he advised me that he had eight years to go on the lease at seventy-five per month, but he stated that he wanted a hundred twenty-five per month if he assigned the lease. He said he wanted all cash for the business, and before I left I asked him about the net profits of the business and he advised me that that business would net thirty thousand dollars per year. In my own mind it seemed like that was an exorbitant figure, so I asked him if he didn't mean gross profit, and he says, 'No,' he says, 'net profit per year.' "

\* \* \*

"Q. Now on that occasion, Mr. Vondra, did Dr. Pyles engage you, acting — or were you acting for the Colorado Land and Investment Company at that time as their agent? A. Yes. I gave him a card of mine. Q. Was Dr. Pyles aware of the fact that you were acting on behalf of the Colorado Land and Investment Company? A. Yes, sir. Q. Was any agreement reached between Dr. Pyles and yourself on behalf of the Colorado Land and Investment Company regarding the listing of the business with the Colorado Land and Investment Company? A. Yes. He plainly stated that we would be the only ones that have the listing, that he was aware that we were dealing in businesses only, and he mentioned a certain friend of his in the real estate business that had inquired about it and that he denied the place was for sale."

This evidence falls short of establishing a contract for an exclusive listing. It amounts to nothing more than an offer to pay a commission if the broker is successful in selling the property at the price and upon the terms

prescribed. This "listing" took place on April 29, 1957. The broker admits that none of its agents contacted the owner until after the middle of the following July. There is no competent evidence in the record tending to prove that the owner had any knowledge at the time he sold the business to Karstens and Backus that he was doing business with prospects of the broker; nor is there evidence tending to prove that the owner placed any limitation whatever upon his right to sell the property through his own efforts.

Question to be Determined.

*Where a broker obtains a listing from the owner of property for the sale thereof at a net price to the owner, and such listing in no way restricts the right of the owner to sell the property through his own efforts; and where the broker has no further contact with the owner and furnishes no information concerning any prospective purchasers, and the owner after more than two and one-half months sells the property to purchasers claimed as prospects by the broker for a sum less than the net price quoted the broker without knowledge that the broker had any contact whatever with such purchasers; is the owner liable to the broker for the payment of a commission?*

■ The question is answered in the negative. We direct attention to the following pertinent language to be found in 12 C.J.S., p. 197:

"The general rule under consideration does not apply and the broker is not entitled to a commission on a transaction consummated by the principal where the contract of employment requires the broker to render a specific service to earn a commission and he has not rendered that service; his right to a commission depends on a condition which has not been waived or fulfilled, such as a sale at a certain price; or where, by reason of the abandonment or failure of his negotiations, or otherwise, he is not the procuring cause of the transaction, *especially where the principal, at the time of*

*concluding the transaction, has no notice of the previous negotiations between the broker and the purchaser,* or where the transaction is closed with a third person with whom the broker has had no relation." (Emphasis supplied.)

In *Anderson v. Smythe,* 1 Colo. App. 253, 28 Pac. 478, it was held that although a broker may in the first instance call attention of a purchaser to property in his hands for sale, where the owner has no knowledge of this fact and sells the property to him in the belief that the transaction is not subject to the payment of a commission, the broker cannot recover a commission from the owner. To like effect are: *Sanden & Huso v. Ausenhus, et al.,* 185 Iowa 389, 168 N.W. 801; *Quist v. Goodfellow,* 99 Minn. 509, 110 N.W. 65; *Terry v. Bartlett,* 153 Wis. 208, 140 N.W. 1133; *Ex Parte Rawls, Rawls v. Carlisle & Baston,* 208 Ala. 164, 93 So. 820.

In *Carpenter v. Francis,* 136 Colo. 494, 319 P. (2d) 497, it was held that before a real estate broker is entitled to a commission it is necessary to prove that he was authorized to act as the owner's agent; that he produced a purchaser ready, willing and able to buy on the terms prescribed by the owner, and that he was the efficient agent or procuring cause of the sale. To the same effect are *Heady v. Tomlinson,* 134 Colo. 33, 299 P. (2d) 120, and *Hayutin v. DeAndrea,* 139 Colo. 40, 337 P. (2d) 383. In the latter case it is said that the efforts of the broker must be the predominating effective cause of the sale, and not merely an indirect, incidental or contributing cause or one of the links in a chain of causes. The evidence of the plaintiff here fails to meet these requirements.

The judgment is reversed and the cause remanded with directions to dismiss the action.

MR. JUSTICE KNAUSS and MR. JUSTICE DAY concur.